UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:20-cr-00135-DLF |
| | ) | |
| | ) | Judge:  Honorable Dabney L. Friedrich |
| JASON CHARTER | ) | |
| | ) | Next Event: Status Hearing |
| | ) |          November 5, 2020 |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION FOR PROTECTIVE ORDER GOVERNING DISCOVERY

The government has moved for a protective order as to two categories of material which it terms "USSS materials" and "sensitive materials." [ECF dkt: 16.] Because the government has failed to show good cause for imposing a protective order as to these two categories of materials, and because the proposed protective order is overbroad, the Court should deny the motion.[1]

### I.     USSS Materials

### A.  The restriction on using USSS material solely for this case is not supported by good cause.

The government's proposed protective order directs that the USSS material shall be used "in connection with no other proceeding, without further order of this Court." (P.O. ¶ 1.) However,

_____

[1] Because the undersigned has not yet seen the USSS materials or sensitive materials, the arguments herein are based on the government's vague representations about the contents of these materials. Defendant requests that he be permitted an opportunity to seek modification of the protective order if the government has misrepresented the contents of the material or if a review of the material would permit him to make additional arguments that cannot be made at present. The government appears to have no objection to Defendant's reservation of this right as its proposed protective order states, "Nothing in this Order shall prevent any party from seeking modification of this Order or from objecting to discovery that it believes to be otherwise improper." (P.O. ¶ 12.)

the government's motion makes no attempt to justify this provision. Whatever decision the Court makes with respect to dissemination of the USSS material to the public at large will necessarily encompass public release in other proceedings. Further, appropriate redactions of the USSS material will obviate the need for this provision since the government does not articulate any need for this prohibition beyond privacy and national security concerns. Finally, a prohibition on the use of the USSS material in other proceedings such as a civil lawsuit or an administrative complaint goes against one of the primary purposes of having camera footage in the first place, which is to promote public accountability.

### B. The restriction on potential witnesses retaining copies is improper because it imposes too much of a burden on Defendant's ability to investigate the case.

The government's proposed order also requires that "[p]otential witnesses and their counsel may be shown copies of the materials as necessary to prepare the defense, but they may not retain copies without prior permission of the Court." (P.O. ¶ 2.) This provision imposes a significant burden on Defendant's ability to interview potential witnesses because ensuring that witnesses do not retain copies requires the witnesses to be shown the videos in person, rather than through videoconferencing software. Given the reluctance of many individuals to have in-person meetings due to COVID-19, this restriction will discourage potentially helpful witnesses from being interviewed by the defense. Any concerns about showing USSS material to witnesses can be dealt with through redactions.

### C. The requirement that defense counsel destroy or return the USSS material is too broad.

The government's proposed order directs that "[u]pon conclusion of this case by acquittal or dismissal, all of the USSS materials and all copies made thereof shall be destroyed or returned to the United States, unless otherwise ordered by the Court." (P.O. ¶ 5.) The proposed order contains an exception which provides that if there is "a conviction in this case, defense counsel

may retain a copy of the USSS materials for appellate purposes for their respective convicted

defendant." (P.O. ¶ 5.) This provision is improper for two reasons. First, the exception only

applies to retention of the material "for appellate purposes" and not for postconviction purposes.

A postconviction motion may arise years after the conviction. If such a proceeding occurs,

undersigned will need a copy of the USSS material to answer any questions from the court or

new defense counsel.

Second, under the D.C. Rules of Professional Conduct, an attorney is required to maintain the

client file for at least five years. Rule 1.16(d); D.C. Bar Op. 283 (July 1998). The "entire" file

must be maintained, not just portions thereof. D.C. Bar Op. 333 (December 2005).

### D. A requirement for certification of destruction is unnecessary because the Court can presume that the undersigned will comply with any order issued.

The government's proposed order directs that as to the USSS material, "The Court may

require a certification as to the disposition of any such materials." (P.O. ¶ 5.) The government

has not shown good cause as to why such a requirement is needed. The undersigned is an officer

of the Court and it should be presumed that he will comply with this Court's orders.

### E. The government has failed to articulate with sufficient specificity the national security harm that will arise from disclosure of the USSS material.

The government attempts to justify the protective order's coverage of USSS material on the

grounds that "disclosure of any hidden camera locations to anyone outside the parties and

authorized persons could pose a significant long-term national security threat to those who work

near the incident location, including individuals who work at the White House, the Eisenhower

Executive Office Building, and other surrounding government buildings." [ECF dkt: 16] at 6.

However, the government fails to explain how disclosure of the particular videos at issue would

reveal the hidden camera locations or how revealing the hidden camera locations to the public

poses a risk of harm. It is possible, for example, that disclosure of the hidden camera locations

would reveal that there are blind spots in the cameras' coverage, but the government makes no such allegation. *See Evans v. Fed. Bureau of Prisons*, 951 F.3d 578 (D.C. Cir. 2020).

The government further argues that "mass release of such videos (and their locations) would alert the public – to include foreign or non-state actors – of closely-held, sensitive information from the White House complex, an area intensely guarded by the U.S. Park Police and U.S. Secret Service." However, it is extremely unlikely that criminals or foreign adversaries would believe that portions of the White House complex or its surroundings are not being monitored simply because some video footage was released in connection with a particular criminal case. Further, the government does not explain even the general nature of the "closely-held, sensitive information" or explain why appropriate redactions could not be made to blur out this information. As the Third Circuit explained in *United States v. Wecht*, 484 F.3d. 194 (3rd Cir. 2007), "good cause is established on a showing that disclosure will work a *clearly defined and serious injury* to the party seeking closure. The injury must be shown with *specificity*. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing." *Id*. at 211 (emphasis added).

**F. If a protective order is approved as to the USSS material, the order should exclude videos from the non-hidden cameras.**

The government includes in the definition of USSS material those videos which are from non-hidden locations without offering good cause for doing so. Significantly, the alleged crime did not take place within the White House, but in Lafayette Square, a public park. The government does not explain how videos which presumably film only public locations from non-hidden cameras implicate national security concerns.

4

II.     **"Sensitive" materials**

**A. The provision that disclosure not be made to persons other than the defendants and counsel impermissibly places the burden of redaction on the defense.**

The government's proposed order indicates that "[t]he United States will produce materials containing personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure (collectively, the 'sensitive materials') to respective defense counsel, pursuant to the defendants' discovery requests." (P.O. ¶ 7.) The defense is then prohibited from providing this information to "any persons other than the defendants, their respective defense counsel, persons employed to assist the defense, or the person to whom the sensitive information solely and directly pertains without prior notice to the United States and authorization from the Court." (P.O. ¶ 8.) As a result, when interviewing potential witnesses, defense counsel must redact the sensitive information before showing the document to the individual. The government has not justified why the burden of redaction should be shifted to the defense. *United States v. Johnson*, 314 F. Supp. 3d 248, 253 (D.D.C. 2018) ("Johnson argues—correctly—that the government has not explained why its attorneys are any less capable of reviewing the footage and redacting sensitive information than is Johnson's attorney. Indeed, it seems that the opposite is true: unlike defense counsel, a government attorney can confer with the officer who wore the body camera to determine whether the footage contains sensitive information and, if so, where that information appears.")

**B. Defendant should be permitted to receive a copy of the sensitive material.**

The proposed protective order specifies that "Defense counsel may show sensitive materials to their respective defendant as necessary to assist in preparation of the defense, however, defense counsel may not provide a copy of sensitive materials to their respective defendant." (P.O. ¶ 9.) However, the government does not show good cause as to why Defendant should be

5

distinguished from the defense team. Since it is defendant who is facing criminal charges and is at risk of losing his liberty, he should have unfettered access to view, review, note, mark up, and assist counsel in preparing a defense. Further, the government offers no case-specific reason for its proposed restriction. This case involves a charge of damaging a statue and not a violent crime. The government points to no evidence that witness intimidation or other harm is likely to occur if Defendant is permitted to copy and not just view the sensitive information. Not all "sensitive information" in every document is likely to be truly sensitive. Under the government's proposed protective order, Defendant could not receive a copy of a document that included the address "1600 Pennsylvania Avenue" because that address in the President's home residence, despite the fact that no conceivable harm could arise from disclosure of this allegedly "sensitive" information.

Further, the government's motion identifies different material as "sensitive information" as compared to the definition in its proposed protective order. The protective order defines the sensitive material as Rule 49.1 personal identity information (P.O. ¶ 7), but the government's motion contains an enumerated list that includes information such as names, nicknames, relatives, and criminal history. [ECF dkt: 16] at 7-8. The government should not be permitted to obtain a protective order on the basis that other information, not listed in the protective is sensitive.

### C. If redactions are made to remove sensitive information, there is no good cause to prevent the defendant from receiving a copy of the material.

The proposed protective order specifies that "Defense counsel may show sensitive materials to their respective defendant as necessary to assist in preparation of the defense, however, defense counsel may not provide a copy of sensitive materials to their respective defendant." (P.O. ¶ 9.) The government has in turn defined "sensitive material" as "materials *containing*

personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure[.]" (P.O. ¶ 7.) This definition suggests that not only Rule 49.1 information, but an entire files containing Rule 49.1 personal identity information is considered "sensitive material." To the extent that the government seeks to prohibited Defendant from receiving a copy of the material that has been redacted to remove Rule 49.1 information, there is no good cause for such a requirement since the removal of sensitive information renders the material, by definition, non-sensitive. Further, any such requirement would impermissibly burden the defense. Undersigned counsel cannot be expected to setup an in-person meeting with Defendant every time Defendant needs to review a document. Undersigned counsel should be able to send emails or screenshots to Defendant containing properly redacted documents.

**D.  Requiring defense counsel to review Defendant's notes impermissibly interferes with the attorney-client relationship.**

The proposed protective order directs that "[i]f a defendant takes notes regarding sensitive materials, their respective defense counsel must inspect those notes to ensure that the  defendant has not copied down personal identity information as identified in Rule 49.1 of the Federal Rules of Criminal Procedure." (P.O. ¶ 9.) This provision will have a chilling effect on Defendant's willingness to take candid notes. For example, Defendant will be unlikely to take notes relating to any perceived ineffectiveness of counsel if he is aware that his counsel will be reading these notes. This intrusion upon the attorney-client relationship is unwarranted, particularly in light of the fact that Defendant is himself bound by the protective order.

**E.  The parties should not be permitted to file materials under seal without specific permission from the Court.**

The protective order provides that "[t]he Clerk shall accept for filing under seal any filings so marked by the parties pursuant to this Order." (P.O. ¶ 11.) This provision is unnecessary and impermissibly removes the Court from its role in ensuring the public's right of access to judicial

records. Sensitive information contained in any filing must be redacted pursuant to Rule 49.1.

This rule also authorizes a person making a redacted filing to file an unredacted copy under seal.

If a filing complies with Rule 49.1 and the terms of protective order, it is unclear why filing

under seal would be necessary. Moreover, should either party believe that it is necessary to file

non-Rule 49.1 material under seal, the normal procedures for obtaining leave of Court would

apply. In seeking leave of Court, the party would need to make an appropriate showing and the

Court would need to make an independent determination as to whether filing under seal is

warranted. Allowing parties to file material under seal simply by designating it as "sealed" will

impermissibly allow the filing of documents under seal without a publicly available justification

of the reasons therefor, and without the Court exercising its own judgment as to whether sealing

is appropriate.

Respectfully Submitted,

ANDREW CLARKE LAW, PLLC
1712 I STREET, NW, SUITE 915
WASHINGTON, DC, 20006
Telephone: (202)780-9144
a.clarke@aclarkelaw.com

/s/Andrew O. Clarke
Andrew O. Clarke, Esquire
DC BAR NO # 1032649
*Counsel for Jason Charter*

## CERTIFICATE OF SERVICE

I hereby certify that on this November 2, 2020, I electronically filed the foregoing with the Clerk of Clerk using the CM/ECF system which will send notification of such filing to Christopher Berridge, Esquire at Christopher.Berridge@usdoj.gov.

/s/Andrew O. Clarke
Andrew O. Clarke, Esquire